IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Cheryl Lawson,                                                    Case No. 3:14CV666

    Plaintiff

v.                                                                **ORDER**

Charles Godfrey, et al.,

    Defendants

This is a civil rights case under 42 U.S.C. § 1983.

Plaintiff, Cheryl Lawson, alleges unlawful seizure under the Fourth Amendment and malicious prosecution under federal and Ohio law.

Jurisdiction is proper under 28 U.S.C. § 1331.

Pending is defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss. (Doc. 5). For the reasons that follow, I grant the motion in part and deny it in part.

**Background**

Lawson is employed as a receptionist at the offices of the Allen Metropolitan Housing Authority (AMHA). The AMHA administers publicly subsidized housing throughout Allen County.

Lawson's office – a dangerous place to work – has security procedures in place. Residents, potential residents, and others who interact with the public housing system are sometimes aggressive toward AMHA employees. Moreover, Lawson's office also maintains custody of documents containing personal, confidential, and financial information about residents.

The door to the AMHA offices is locked at all times. Before anyone may enter, Lawson or another employee must either manually or, with a buzzer, remotely unlock the door. Lawson's

instructions are not to permit entry to unexpected visitors without an appointment or authorization from a supervisor.

On March 27, 2012, four police officers in plain clothes came to the AMHA office and, seeking entry, knocked on the door.

The four men were Sergeant Charles Godfrey and Detective Andrew Johnson of the Lima Police Department, Shawnee Township Investigator Jack Miller, and Ohio Bureau of Criminal Investigations Agent Gary Miller. The officers did not have a warrant to enter the AMHA.

Sergeant Godfrey attempted to open the door on his own, then stated he was a police officer, and briefly displayed his badge.

Lawson approached the door. She did not know or recognize who the men were. Accordingly, she followed her standing instructions regarding unexpected visitors and did not immediately let them into the office.

On being delayed, Sergeant Godfrey threatened to break down the door if Lawson did not open it immediately. When Lawson still did not open the door, Sergeant Godfrey first threatened to arrest her, and then told her she was under arrest for obstructing justice.

Only two minutes elapsed from the time officers arrived at the AMHA and Godfrey's announcement that Lawson was under arrest. Immediately after Godfrey had done so, another AMHA employee, who knew and was a personal friend of Sergeant Godfrey and the other officers, let the officers into the office.

When Sergeant Godfrey entered the office, Lawson submitted to being arrested. Godfrey handcuffed Lawson. Other officers took her to police headquarters and placed her in a holding cell. Godfrey instructed Lima Patrol Officer Eric Mericle to charge Lawson with "obstructing official

business." On March 29, 2012, Officer Mericle, based on Sergeant Godfrey's report, filed the charge.

News of Lawson's arrest and the charge filed against her appeared in the press.

After a year of pre-trial proceedings, the Allen County Prosecutor dismissed the charge against Lawson.

## Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"This standard demands that the factual allegations raise a right to relief above the speculative level and nudge the claims across the line from conceivable to plausible." *Erie Cnty. v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012). Although the plausibility standard "is not akin to a probability requirement," a plaintiff must plead "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, *supra*, 556 U.S. at 678.

## Discussion

### A. Fourth Amendment Claim Against Godfrey In His Individual Capacity

Lawson alleges her arrest violated the Fourth Amendment because Sergeant Godfrey lacked probable cause to believe she was committing the offense of obstructing justice. Godfrey responds that, even if a Fourth Amendment violation occurred, qualified immunity defeats plaintiff's claim.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To resolve Godfrey's qualified immunity claim, I must determine whether Lawson has alleged the deprivation of a constitutional right at all, and whether that right was clearly established at the time of Lawson's arrest. *Id.* at 232.

### 1. Whether a Constitutional Violation Occurred

Godfrey arrested Lawson for violating Ohio Rev. Code § 2921.31(A), which provides that, "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

The elements of the offense are: 1) the defendant performed an unprivileged act; 2) with the purpose of preventing, obstructing or delaying the performance by a public official of an authorized act within his official capacity; and 3) which hampers or impedes the public official in the performance of his lawful duties. *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005).

Accepting the allegations in the complaint as true, a rational trier of fact could find that Lawson neither perform an unprivileged act nor, in any event, intended to prevent, obstruct, or delay Godfrey's acts.

Ohio courts have also held that, to violate § 2921.31(A), a defendant must engage in some affirmative or overt act. *State v. Prestel*, 2005 WL 2403941, *2 (Ohio App.); *see also N. Ridgeville v. Reichbaum*, 112 Ohio App. 3d 79, 84 (1996); *Hamilton v. Hamm*, 33 Ohio App. 3d 175, 176 (1986).

Moreover, the Ohio courts have held that refusing to open a door for officers, even in the face of the officers' persistent knocking, is not an affirmative act for purposes of the obstruction

4

statute. *Columbus v. Michel*, 55 Ohio App. 2d 46, 48 (1978) (refusal to open apartment door for police was not an affirmative act constituting obstruction, for purposes of municipal code phrased in language identical to O.R.C. § 2921.31(A), even though police could justifiably have broken down the door); *see also City of Parma v. Cincinnati*, 2001 WL 1352657, *3-4 (Ohio App.) (same).

Furthermore, the allegation that Lawson denied the officers entry into the building because she did not know who they were, and wanted to check with supervisors before allowing them inside, establishes that a reasonable officer would understand that Lawson did not act with the purpose to delay, prevent, or obstruct Godfrey.

Finally, the delay that resulted from Lawson's following prescribed protocol was, at most *de minimis*, and hardly impeded the officers in accomplishing the purposes of their visit.

Given the allegations in the complaint, Lawson was not "preventing, obstructing, or delaying" within the meaning of § 2921.31(A), because her refusal to open the door – and in essence, "doing nothing" – did not constitute an affirmative act. *Lyons*, *supra*, 417 F.3d at 573-74 ("Under Ohio law, [obstructing official business] demands an affirmative act that interrupts police business. A person may not be convicted of the offense simply by doing nothing . . .").

Ohio law in that regard is settled, and should have been known to a reasonable officer.

Consequently, Godfrey did not have lawful probable cause to believe that Lawson was violating the Revised Code. Lawson has, therefore, adequately alleged the deprivation of a constitutional right.

### 2. Whether the Right Was Clearly Established

Qualified immunity shields an officer from suit when the officer makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

Because the focus is on whether the officer had fair notice that his conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. *Id.* If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or the burdens of litigation. *Id.*

There are two paths to show that an officer was on notice that he was violating a "clearly established" constitutional right: 1) where the violation was sufficiently "obvious" under the general standards of constitutional law that the plaintiff need not show "a body" of "materially similar" case law; or 2) where the violation is shown by the failure to adhere to a "particularized" body of precedent that "squarely govern[s] the case here." *Id.* at 199-200.

Lawson here has traversed both of these paths.

First, the constitutional violation was an "obvious" one that was "clearly established" even without a body of relevant case law. *See Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (Eighth Amendment violation was clearly established, despite the absence of a materially similar case).

Accepting all of Lawson's factual allegations as true, Lawson's arrest for taking no action to facilitate Sergeant Godfrey's entry into the building was an obvious violation of Lawson's Fourth Amendment rights. Thus, Sergeant Godfrey violated a "clearly established" constitutional right.

Second, precedent "squarely governs the case here." *Brosseau*, *supra*, 543 U.S. at 600.

Under Ohio law, doing nothing in response to police commands does not constitute obstructing official business under § 2921.31(A). *Lyons*, *supra*, 417 F.3d at 573-74 ("Under Ohio

6

law, [obstructing official business] demands an affirmative act that interrupts police business. A person may not be convicted of the offense simply by doing nothing[.]"

Moreover, as noted above, a failure to open a door for officers is not an affirmative act. *Columbus*, *supra*, 55 Ohio App. 2d at 48; *City of Parma*, *supra*, 2001 WL 1352657, *3-4.

Because Sergeant Godfrey's conduct violated clearly established law, he is not entitled to qualified immunity.

### B. Fourth Amendment Claim Against Defendants in Their Official Capacities

I agree with defendants that the claims against them in their official capacities cannot proceed. To prevail on these claims (and hold the Department, rather than the individual officers, liable), Lawson must allege that their actions fulfilled a municipal policy. But because Lawson offers only conclusions to support that claim, her pleading is insufficient under *Iqbal* and *Twombley*.

### C. Claims Against Officer Mericle

I will also dismiss the claims against Officer Mericle, because plaintiff's complaint establishes that Mericle acted solely at the direction of his superior. There is thus no basis for inferring that Mericle himself intended to or did violate plaintiff's Fourth Amendment rights. *See Iqbal*, 565 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Nor is there any basis in the complaint for supposing Mericle had reason to doubt Sergeant Godfrey's instructions. Accordingly, Mericle is also entitled to qualified immunity. *See Saad v. Keller*, 546 F. App'x 552, 559 (6th Cir. 2013).

Moreover, Mericle could also claim, under the facts of this case, that he neither knew nor had reason to know that Godfrey's instructions were without a lawful basis. *See Anthony v. City of*

7

*New York*, 339 F.3d 129, 138 (2d Cir. 2003) (Sotomayor, J.) ("Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to concluded that the necessary legal justification for his actions exist.").

Simply put, in circumstances such as those Lawson alleges, the law does not put a subordinate officer to the Hobson's Choice of doing as instructed (and risking a § 1983 suit) or disobeying a superior's command (and risking loss of his job). *See id*; *see also Saad*, 546 F. App'x at 559.

### D. Malicious Prosecution Claims

Lawson also brings malicious prosecution claims against Godfrey under both federal and Ohio law.

A malicious prosecution claim under § 1983 requires that:1) the defendant initiated a criminal prosecution against the plaintiff; 2) in the absence of probable cause; 3) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and 4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010).

These elements overlap with those of an Ohio claim for malicious prosecution, though under Ohio law Lawson need not allege a deprivation of liberty besides her additional arrest.

### 1. Criminal Prosecution Against Lawson

An officer may be responsible for commencing a criminal proceedings against a plaintiff, where the officer "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007).

The facts in the complaint allege that Godfrey made the decision to prosecute Lawson and instructed a patrol officer to file an "obstructing official business" charge against her.

Because Godfrey directed Officer Mericle to file charges, these allegations establish Sergeant Godfrey may be liable for the decision to prosecute Lawson.

### 2. Lack of Probable Cause

As discussed above, the complaint plausibly alleges Lawson did not perform an affirmative act or prevented, obstructed, or delayed Sergeant Godfrey, and Sergeant Godfrey's act of entry was not authorized. Accordingly, there was no probable cause for the criminal prosecution.

### 3. Termination in Plaintiff's Favor

Under Ohio law, the voluntary dismissal of charges, without a plea bargain or other condition, constitutes a termination in favor of the accused. *Froehlich v. Dep't of Mental Heal*, 114 Ohio St. 3d 286, ¶¶16, 20 (2007); *Ash v. Ash*, 72 Ohio St. 3d 520, 522 (1995) ("[A]n unconditional, unilateral dismissal of criminal charges or an abandonment by the prosecutor or the complaining witness that results in the discharge of the accused generally constitutes a termination in favor of the accused.").

Accordingly, Lawson has adequately pled this element of her Ohio malicious prosecution claim.

The federal case law also suggests plaintiff has adequately pled her federal malicious prosecution claim. *See White v. Rockafellow*, 181 F.3d 106, *1 (6th Cir. 1999) (unpublished opinion) (nolle prosequi was favorable termination); *McGuire v. Royal Oak*, 2006 WL 540185, *9 (E.D. Mich.) (same).

### 4. Deprivation of Lawson's Liberty

Finally, for purposes of her federal claim, Lawson must allege that, "as a consequence of a legal proceeding," she suffered a "deprivation of liberty." *Sykes*, *supra*, 625 F.3d at 308-309.

Courts have found a deprivation sufficient to satisfy this element where the plaintiff was arrested, booked, and released on bond after a pretrial hearing. *See Phat's Bar & Grill v. Louisville Jefferson County Metro* Government, 918 F. Supp. 2d 654, 663 (W.D. Kentucky 2013); *Amine v. King*, 2011 WL 4387229, *12 (E.D. Mich. 2011).

From the complaint it is clear that after her initial seizure, Lawson was handcuffed, placed in a holding cell until released on bond. The facts also demonstrate the charge against Lawson was pending for over a year and required multiple pre-trial court proceedings. Because Lawson was placed in a holding cell until released on bond, she has plausibly alleged a deprivation of liberty.

For these reasons, I will deny defendants' motion to dismiss the state and federal malicious prosecution claims.

## Conclusion

For the reasons set forth above, it is

ORDERED THAT defendants' motion to dismiss (Doc. 5) be, and the same hereby is, granted in part to dismiss defendant Mericle and the official-capacity claims, and otherwise denied in part, as provided herein.

The Clerk of Court shall forthwith set a status/scheduling conference.

So ordered.

/s/ James G. Carr<br>
Sr. U.S. District Judge